IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00856-PAB-KLM

PRECISION CONCRETE CUTTING, INC.,

     Plaintiff,

v.

CONCRETE SIDEWALK SOLUTIONS, INC., d/b/a SIDEWALK SHAVERS
OF COLORADO, a Colorado corporation,

     Defendant.
_____

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL RESPONSE TO INTERROGATORY 6(a)
_____

This matter is before the Court on **Defendant's Oral Motion to Compel Plaintiff to Respond to Interrogatory 6(a)** (the "Motion"). The Court has considered the comments of counsel at the hearing held on March 12, 2010, Plaintiff's Response to Defendant's First Set of Interrogatories, Plaintiff's Brief on Discovery Relevant to Damages Through The Use of a Hypothetical Franchisee [Docket No. 66; Filed March 19, 2010] ("Plaintiff's Brief"), Defendant's Brief in Support of Its Motion to Compel a Response to Interrogatory No. 6 [Docket No. 67; Filed March 19, 2010] ("Defendant's Brief"), the case file, the law, and is advised in the premises. As set forth below, the Motion is **DENIED.**

## I. Background

This is a patent infringement case. Plaintiff asserts that it holds a patent regarding methods for removing trip hazards in concrete sidewalks. Complaint [#1] at ¶¶ 13-14. Plaintiff further asserts that it is "a fast-growing multi-state group of trip hazard removal

1

specialists that have removed uneven concrete trip hazards from over 10,000 miles of sidewalk." *Id.* at ¶ 2. Although not clear from the Complaint, Plaintiff apparently sells franchises relating to use of its patent. Plaintiff asserts that Defendant has infringed the patent. *Id.* at ¶ 16.

Defendant's Interrogatory No. 6(a) seeks the identity of "each person and/or entity with whom [Plaintiff has] negotiated any terms for becoming a prospective franchise investor including without limitation, all former franchise investors." Defendant seeks this information in conjunction with Plaintiff's expert report, which purportedly asserts that Plaintiff "provide[s] information. . .to prospective franchise investors, [and] the costs associated with starting a business to use the technology and equipment. . . ." Defendant contends that the information requested in Interrogatory 6(a) is relevant because Plaintiff's expert report "asserts as [sic] the willing licensor-willing licensee negotiation basis for establishing a reasonable royalty" relating to use of the patent. Defendant asserts that Plaintiff's expert is expected to testify that a franchise license costs "$120,000 and an on-going royalty of 5% of gross earnings." *Defendant's Brief* at p.1.[1] Finally, Defendant argues that the information sought in Interrogatory 6(a) is relevant to the calculation of a reasonable royalty for use of Plaintiff's patent**,** pursuant to applicable caselaw.

Plaintiff, on the other hand, asserts that "[i]n this case there is [sic] very well established method for obtaining a license to use the patented methods, and the royalty rate at which each use is paid for. In other words, there is no need to try to try [sic] to create a hypothetical negotiation because the patentee has consistently licensed to others

---

[1] Defendant has not provided the Court with a copy of Plaintiff's expert report. However, Plaintiff does not dispute Defendant's characterization of the contents of that report.

at the rate set forth in the confidential franchise agreement that has been provided to the Defendant." *Plaintiff's Brief,* at p. 4.

## II. Analysis

The parties do not dispute that calculation of a reasonable royalty is central to Plaintiff's claim for damages in this case. 35 U.S.C. § 284. "An established royalty is usually the best measure of a 'reasonable' royalty for a given use of an invention because it removes the need to guess at the terms to which parties would hypothetically agree." *Monsanto Co. v. McFarling*, 488 F.3d 973, 978-979 (Fed. Cir. 2007), citing *Birdsall v. Coolidge*, 93 U.S. 64, 70 (1876).

> When the patentee has consistently licensed others to engage in conduct comparable to the defendant's at a uniform royalty, that royalty is taken as established and indicates the terms upon which the patentee would have licensed the defendant's use of the invention.

*Id.* Defendant, however, asserts that "Plaintiff has elected, as its bases [sic] for a calculation of, not on [sic] an established royalty, but rather on the willing-buyer/willing-seller concept in which a suppositious meeting between the Plaintiff and the Defendant is held to negotiate a license agreement." *Defendant's Brief*, at p. 3.

It is difficult to understand how the parties could expect the Court to decide an issue relating to the relevance of information to an expert's damages opinion without providing a copy of the expert report. Neither party has filed a copy of Plaintiff's expert report, despite the fact that Defendant's Interrogatory 6 is explicitly directed to that report. Moreover, this oversight is particularly egregious in light of the parties' briefing, which establishes that there is a fundamental disagreement about the expert's damages opinion. Plaintiff asserts that the basis for the expert's damages calculation is "the franchise fee

royalties due for practicing one or more of the processes covered by the patents-in-suit[,] [which] are set forth in the confidential franchise agreement that has been provided to Defendant's counsel."[2] *Plaintiff's Brief,* at p. 2. Defendant, on the other hand, contends that the expert's damages opinion is based on "the willing licensor-willing licensee negotiation. . .for establishing a reasonable royalty." *Defendant's Brief,* at p.1. However, Defendant also contends that Plaintiff's expert is "expected to testify that 'arm-length [sic] negotiations for a license to use the patented technology. . .would cost. . .an ongoing royalty of 5% of gross earnings.'" *Defendant's Brief*, at p. 1. Defendant does not specify whether the 5% royalty figure is derived from the form of franchise agreement or from the expert's analysis of a willing buyer/willing seller transaction.

Regardless of whether Plaintiff's expert's opinion is based upon a uniform royalty or the so-called "willing licensor-willing licensee negotiation," the *identities* of persons and entities with whom Plaintiff has negotiated franchise terms is not relevant to the subject matter of the litigation. Because Interrogatory 6(a) is directed only to discovering those individuals' and entities' names, addresses, telephone numbers and other identifying information,[3] it does not seek information which is likely to lead to the discovery of admissible evidence. *See* FED.R.CIV.P. 26(b)(1) (discovery sought must "appear[] reasonably calculated to lead to the discovery of admissible evidence"); *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be

---

[2] This argument could be interpreted to mean that the "confidential franchise agreement" sets forth a pre-determined royalty of 5%, which is not negotiable. However, Plaintiff has neglected to provide the Court with a copy of the agreement, and has neglected to submit any other evidence relating to any alleged non-negotiability of the royalty amount.

[3] Defendant's Interrogatories contain definitions of "identify," when used to refer to a person and an entity, which specify that this is the specific information sought.

considered relevant if there is any possibility the information sought may be relevant to a claim or defense).  If Defendant's interpretation of the basis for Plaintiff's damages expert's opinion is correct, then information regarding the royalty *amounts* negotiated between Plaintiff and willing franchisees is relevant to the litigation.  However, it is difficult to see how the names and addresses of such "willing franchisees" would be relevant under any circumstances.  In light of Plaintiff's contention that it has "over 26 franchises in 19 states," the burden and/or expense imposed upon Plaintiff of providing the information sought is likely to outweigh its limited benefit, considering the extremely limited importance of the discovery in resolving the issues in the case.  *Plaintiff's Brief*, at p. 2; FED.R.CIV.P. 26(b)(2)(C)(iii).

Accordingly, Defendant's Motion is **DENIED**.


/s/_____
Kristen L. Mix
United States Magistrate Judge




Dated:  March 24, 2010